UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MELISSA CHEVALIER,
    Plaintiff,

v.

BAE SYSTEMS, INC., *et al.*,
    Defendants.

Civil Action No. 23-1651 (CKK)

**MEMORANDUM OPINION**
(March 20, 2025)

This ERISA case comes before the Court on Defendant New York Life Insurance Company's [9] Motion to Dismiss for Failure to State a Claim. Having reviewed the parties' briefing, the record, and the applicable law,[1] the Court shall **DENY** that motion.

## I. BACKGROUND

Congress enacted the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, to "protect . . . the interests of participants in employee benefit plans and their beneficiaries," *id.* § 1001(b). ERISA provides for the "comprehensive regulation of employee welfare and pension benefit plans" by imposing a litany of requirements on the entities that administer those plans. *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 650–51 (1995). ERISA also supplies an equally "comprehensive civil enforcement scheme" to give that regulatory regime real-world teeth. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). As relevant here, a participant in a plan governed by ERISA may bring a civil suit "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B).

---

[1] The Court's consideration focused on: Chevalier's Complaint, ECF No. 1 ("Compl."); New York Life's Memorandum in Support of its Motion to Dismiss, ECF No. 9-1 ("Mot."); Chevalier's Response in Opposition to the Motion to Dismiss, ECF No. 13 ("Opp'n"); and New York Life's Reply, ECF No. 14 ("Reply"). Exercising its discretion, the Court determined a hearing was unnecessary to resolve the Motion. *See* LCvR 7(f).

1

Plaintiff Melissa Chevalier now brings such a suit. Chevalier worked for Defendant BAE Systems, Inc. Compl. ¶ 7. BAE sponsored an employee welfare benefit plan governed by ERISA, and Chevalier enrolled in that plan during her time at BAE. *Id.* ¶¶ 8–9. Two components of the BAE benefits plan merit discussion.

First, BAE's plan offered a Short-Term Disability (STD) benefits policy for employees temporarily unable to work due to a covered illness. Compl. ¶ 29. That policy was self-funded, meaning STD benefits were paid with contributions from BAE. *See id.* ¶ 12. But BAE did not administer the STD policy directly. Rather, Defendant Life Insurance Company of North America (LINA) was named both the "Fiduciary Decision Maker" and "Claims Administrator." *Id.* Ex. B.

Second, BAE's plan also offered a Long-Term Disability (LTD) benefits policy for employees unable to work for an extended period due to a covered illness. Compl. ¶ 45, Ex. C. BAE funded the LTD policy by purchasing an insurance contract. *Id.* ¶ 13. The LTD policy states that LINA was the insurer, "Fiduciary Decision Maker" and "Claims Administrator." *Id.* Ex. C.

In 2020, Chevalier stopped working for BAE due to serious medical problems. Compl. ¶ 28. Unable to work, Chevalier applied for benefits under the STD and LTD policies. *Id.* ¶¶ 30, 46. Her applications for both categories of benefits were denied. *Id.* ¶¶ 31, 47. Chevalier appealed those denials. *Id.* ¶¶ 33, 49. But both her appeals were denied too. *Id.* ¶¶ 34, 69. Chevalier then filed this suit under ERISA, requesting the unpaid STD and LTD benefits to which she claims entitlement, prejudgment interest, and attorney's fees and costs. *Id.* at 18.

Chevalier named BAE and LINA as defendants. Both have answered her Complaint. LINA Answer, ECF No. 7; BAE Answer, ECF No. 17. But Chevalier also brought suit against Defendant New York Life Insurance Company, LINA's corporate parent. Instead of answering, New York Life filed the instant motion to dismiss. And its motion is ripe for decision.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." To survive such a motion, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In making that assessment, courts "must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor." *Sanchez v. Off. of State Superintendent of Educ.*, 45 F.4th 388, 395 (D.C. Cir. 2022). Courts "do not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014).

When evaluating a Rule 12(b)(6) motion, the Court generally confines itself to the facts alleged in the complaint and any documents attached thereto. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). If the Court delves beyond the pleadings, it must treat the motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). But "where a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) (TAF), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002). Without this safety valve, "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Krukas v. AARP, Inc.*, 458 F. Supp. 3d 1, 14 n.9 (D.D.C. 2020) (BAH) (quoting *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

## III. ANALYSIS

For the reasons that follow, the Court concludes that Chevalier's Complaint pleads factual allegations that, taken as true, suffice to state a plausible claim against New York Life. As a result, the Court will deny New York Life's Motion to Dismiss.

New York Life does not dispute the merits of Chevalier's suit in a traditional sense. Rather, it asserts that—whatever the merits of Chevalier's claims—those claims cannot proceed *against New York Life* because "it is not the employer, it is not the insurer of any benefits, and it did not render the decisions at issue." Mot. at 6. In short, New York Life argues Chevalier has sued the wrong defendant. New York Life concedes that LINA is a proper defendant and that LINA is its wholly-owned subsidiary. But it argues this relationship alone is insufficient to ground Chevalier's claim against it. To the extent Chevalier's Complaint alleges that New York Life is more than just LINA's corporate parent, New York Life argues the Court cannot credit those allegations because they are contradicted by documents not included in the Complaint.

The Court begins with the law, then catalogs Chevalier's factual allegations against New York Life, and finally considers whether those allegations cannot be credited based on any extra-pleading materials properly before the Court.

### A. Proper Defendants Under ERISA

The briefing in this matter is opaque. New York Life argues it is not a proper defendant to this suit. Chevalier disagrees. But the parties' papers do not squarely answer two threshold questions necessary to resolve New York Life's Motion. First, under what provision of ERISA is this case proceeding? Second, who qualifies as a proper defendant under that provision? The Court now endeavors to resolve this confusion.

4

ERISA offers multiple avenues to relief for violations of its regulatory provisions. *See* 29 U.S.C. § 1132(a). Section 1132(a)(1)(B) provides relief when claims for benefits are denied in contravention of an ERISA plan's terms. Nine other subdivisions provide relief in different scenarios. *See id.* §§ 1132(a)(2)–(11). A tenth, Section 1132(a)(3), functions as a "catchall" remedial provision, *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996), authorizing suit to enforce "any provision" of ERISA "or the terms of the plan," 29 U.S.C. § 1132(a)(3).

Chevalier's Complaint does not state under which provision or provisions of ERISA she is proceeding. This frustrates the Court's analysis because ERISA's various remedial hooks often overlap. *See, e.g.*, *Varity Corp.*, 516 U.S. at 507–515 (explaining why plaintiffs may sue under both Sections 1132(a)(2) and (a)(3) for breaches of fiduciary duties). Helpfully, Chevalier's Opposition to New York Life's Motion appears to clarify that she is bringing this action "[u]nder 29 U.S.C. § 1132(a)(1)(B)" to recover benefits due to her under the plan. Opp'n at 4. Unhelpfully, Chevalier goes on to rely on cases construing other ERISA provisions. *E.g.*, *id.* (citing *Phelps v. C.T. Enters., Inc.*, 394 F.3d 213 (4th Cir. 2005)). New York Life does the same in its Reply. *E.g.*, Reply at 4 (citing *Harris v. Koenig*, 602 F. Supp. 2d 39 (D.D.C. 2009) (GK)). For present purposes, the Court will take Chevalier at her word and proceed under Section 1132(a)(1)(B).

With the relevant statute identified, the Court must next determine that statute's requirements. Section 1132(a)(1)(B) provides as follows:

(a) A civil action may be brought—

    (1) by a participant or beneficiary—

        . . .

        (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . .

29 U.S.C. § 1132(a)(1)(B).  Notably, although the statute dictates who may sue and for what purposes, it says nothing about who may *be sued*.  In fact, "[t]here are no limits stated anywhere in § 1132(a) about who can be sued." *Cyr v. Reliance Std. Life Ins. Co.*, 642 F.3d 1202, 1205 (9th Cir. 2011) (en banc).  That silence has vexed courts before.  *See Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 246 (2000) (grappling with the fact that Section 1132(a)(3) "makes no mention at all of which parties may be proper defendants").  So too here, the Court is left with the open question of which parties may be sued under Section 1132(a)(1)(B).

Although the *raison d'être* for New York Life's Motion is ascertaining whether it is a proper defendant for this suit under Section 1132(a)(1)(B), neither party addresses the legal question of the statute's scope in any depth.  New York Life's Motion offers no commentary on the issue at all.  *See* Mot. at 12–14.  Chevalier's Opposition provides the Court with a district court's recitation of the Fourth Circuit's view in a single explanatory parenthetical.  *See* Opp'n at 4 (quoting *McRae v. Rogosin Converters, Inc.*, 301 F. Supp. 2d 471, 475 (M.D.N.C. 2004)).  And New York Life's Reply does the same, this time with an unpublished decision of the Third Circuit. *See* Reply at 4 (quoting *Evans v. Emp. Benefit Plan, Camp Dresser & McKee, Inc.*, 311 F. App'x 556, 558 (3d Cir. 2009)).  Unassisted by the statute or the parties, the Court looks elsewhere.

The natural starting point for answering a legal question in this District is, of course, the opinions of the U.S. Court of Appeals for the District of Columbia Circuit.  But as far as the Court is aware, the D.C. Circuit has never addressed the question of who is susceptible to suit under Section 1132(a)(1)(B).  So the Court must look further afield for guidance.

Other Courts of Appeals have had occasion to address the scope of liability created by Section 1132(a)(1)(B).  For a time at least, the result was a deep and acknowledged circuit split. *See Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1194 (8th Cir. 1998) (surveying this split).  Some courts

held that only the employee-benefits plan itself could be named as a defendant.[2] *E.g.*, *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 551 (7th Cir. 1997). Some also allowed suit against the plan's designated claims administrator. *E.g.*, *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433 (3d Cir. 1997). And others extended liability further to any "party that controls administration of the plan." *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997) (per curiam).

More recently though, the Courts of Appeals appear to have coalesced around a "restrained functionalist" approach to the issue. *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 844 (5th Cir. 2013) (collecting cases). Under this functionalist view, a defendant may be subjected to liability under Section 1132(a)(1)(B) "if it exercises 'actual control' over the administration of the plan" even if it is not formally named as the plan's administrator and is not the plan itself. *Id.*; *see also Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 915–16 (7th Cir. 2013) (allowing suit against an insurance company that "decides all eligibility questions"); *Cyr*, 642 F.3d at 1207 (holding that an entity other than the plan administrator could be sued because it "denied Cyr's request for increased benefits").

The parties do not engage with this long-running debate over the scope of ERISA liability under Section 1132(a)(1)(B). But they appear to agree in principle with the functionalist approach. Chevalier focuses her arguments on whether New York Life was, in fact, "the decision-making claims administrator" even though the plan itself named LINA as the claims administrator. Opp'n at 8. And New York Life invites the Court to assess "the type of control" that it exercised over the plan and LINA. Reply at 7. Both arguments sound in a functionalist inquiry.

---

[2] The concept of suing the plan itself, rather than the employer who sponsors the plan or the contractor who administers it, may seem odd at first blush. But ERISA provides that a covered employee-benefit plan "may sue or be sued under this subchapter as an entity." 29 U.S.C. § 1132(d)(1). Because the statute explicitly authorizes suit against the plan itself, some courts have warned that "it is silly not to name the plan as a defendant in an ERISA suit." *Mein v. Carus Corp.*, 241 F.3d 581, 585 (7th Cir. 2001). Chevalier has not named BAE's plan as a defendant in this matter.

Against this backdrop, and in the absence of substantial briefing from the parties, the Court will assume—for purposes of the instant Motion—that the functionalist view is correct. Accordingly, the question presented by New York Life's Motion is whether Chevalier's Complaint pleads facts sufficient to support a plausible inference that New York Life exercised actual control over the BAE plan when Chevalier's claims for STD and LTD benefits were denied.

### B. Chevalier's Factual Allegations

Chevalier's Complaint alleges that New York Life actually controlled the BAE plan and was directly responsible for the denial of her benefits. New York Life derides these allegations as "threadbare." Mot. at 9. But the Court disagrees. Using the abbreviation "NYL" for New York Life, Chevallier alleges that:

- "NYL and LINA acted as claim administrators of the subject plans, making the claim decisions on Chevalier's claims described herein." Compl. ¶ 10.

- "NYL denied Chevalier's claim for" STD benefits. *Id.* ¶ 31.

- Chevalier appealed the denial of STD "benefits to NYL." *Id.* ¶ 32.

- NYL sent Chevalier a letter denying that appeal and explaining why. *Id.* ¶¶ 33–34.

- "NYL denied Chevalier's claim for" LTD benefits. *Id.* ¶ 47.

- Chevalier appealed the denial of LTD "benefits to NYL." *Id.* ¶ 49.

- "NYL sent a letter confirming that Chevalier's appeal was under medical review" and then sent four more letters requesting additional information and confirming receipt of that information along the way. *Id.* ¶¶ 59–68.

- "NYL sent a letter stating that Chevalier's claim was denied." *Id.* ¶ 69.

These allegations are all factual assertions about events in the world; they are not legal conclusions or bare recitations of the elements of an ERISA claim. At the 12(b)(6) stage, the Court must accept them as true and draw all reasonable inferences from them in Chevalier's favor. *Sanchez*, 45 F.4th at 395. Accepting as true that New York Life corresponded directly with

8

Chevalier about her claims under the BAE plan and sent her letters denying her claims and appeals, it is reasonable to infer that New York Life exercised actual control over the BAE plan. Because New York Life does not attempt to identify any other defect in Chevalier's claims, the Complaint on its face plausibly states a claim for relief against New York Life.

### C. Documents Outside the Complaint

New York Life does not argue in earnest that the Complaint's factual allegations, accepted as true, are insufficient to state a claim. Instead, it argues the Court must reject those allegations because they are contradicted by two documents attached to its Motion. First, New York Life presents an Administrative Services Agreement between LINA and BAE that designates LINA as the BAE plan's Claims Administrator and does not reference New York Life. *See* Mot. Ex. A. Second, New York Life provides a summary of the LTD policy that names LINA—not New York Life—as the insurer and fiduciary responsible for deciding claims and appeals. *See* Mot. Ex. B.

Oddly, Chevalier makes no mention of the fact that New York Life's argument for dismissal is premised almost entirely on documents not included in or attached to the Complaint. Reliance on material from outside a complaint to contradict a plaintiff's factual allegations is, of course, not the usual practice on a motion to dismiss under Rule 12(b)(6). But, as the Court has explained above and elsewhere, the Court may consider "documents on which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Klayman v. Judicial Watch, Inc.*, 267 F. Supp. 3d 81, 84 (D.D.C. 2017) (CKK) (citation omitted). And other courts in this District have reviewed the terms of benefits plans attached as exhibits to motions to dismiss in ERISA cases. *See, e.g.*, *Strumsky v. Wash. Post Co.*, 842 F. Supp. 2d 215, 218 (D.D.C. 2012) (RCL); *Nat'l Shopmen Pension Fund v. Disa*, 583 F. Supp. 2d 95, 99 (D.D.C. 2008) (RCL).

The problem for New York Life is that, even if the Court accepts this evidence from beyond the Complaint, the Complaint still supports a plausible inference that New York Life exercised actual control over the BAE plan. At best, the Administrative Services Agreement and LTD policy summary show that LINA, rather than New York Life, was formally designated the claims administrator of BAE's plan. But the documents attached to Chevalier's Complaint already showed that. *See* Compl. Exs. B, C (both listing LINA as "Claims Administrator"). And the *formal* authority memorialized in these documents does not rebut the inference supported by the Complaint that New York Life in fact wielded *actual* authority over the BAE plan.

Moreover, Chevalier offers additional support for that inference in her Opposition. There, she provides a letter addressed to her attorney that discusses her appeal of the denial of her claim for LTD benefits. Opp'n at 5.[3] Although the letter names LINA as the "Underwriting Company," it is written on New York Life letterhead and lists a New York Life PO box as the return address. *Id.* And the letter states explicitly that Chevalier's "appeal is being managed by" a member of the "New York Life Group Benefits Solutions Pittsburgh Appeal Team." *Id.* New York Life does not dispute that letter's authenticity. At the 12(b)(6) stage, the Court will not discredit Chevalier's factual allegation that New York Life administered her appeal when she has provided a letter on New York Life's letterhead stating explicitly that New York Life is administering her appeal.

New York Life directs the Court to three cases for the proposition that the "presence of parent company logos or letterhead on correspondence does not establish that the parent company" actually administered the plan. Reply at 5. But none are binding. And none persuade.

---

[3] Despite grounding its argument for dismissal squarely in documents not included in the Complaint, New York Life urges the Court to ignore the letter because it appears only in Chevalier's Opposition. Reply at 5. But Chevalier's Complaint specifically describes the letter. Compl. ¶ 60. And the Court may rely on a document "referred to in the complaint" and "central to the plaintiff's claim" when assessing a motion to dismiss. *Vanover*, 77 F. Supp. 2d at 98.

10

In one case, a magistrate judge observed in a footnote that the plaintiff amended his complaint to drop claims against a company whose name and logo appeared on correspondence. *Hayes v. Cigna Health & Life Ins. Co.*, No. 18-cv-542, 2019 WL 6125318, at *1 n.1 (W.D. La. Sept. 17, 2019). But the magistrate did not "hold[]" anything about the issue. Reply at 6.

Another case raised the question whether an entity whose letterhead was used to deny a claim was, in fact, the claims administrator. *Johnson v. Unum Life Ins. Co. of Am.*, 329 F. Supp. 2d 161, 167 n.5, 171 (D. Me. 2004). But the court ultimately declined to resolve that question. *Id.* at 171. And in any event, the question arose on a motion for summary judgment and, as a result, on a standard of review inapplicable here. *Id.*

In the final case, all correspondence regarding the plaintiff's claims came on UnumProvident's letterhead. *Cagle v. Unum Life Ins. Co. of Am.*, No. 07-cv-157, 2009 WL 995544, at *13 (E.D. Mo. Apr. 13, 2009). But the court concluded that this fact "in and of itself, does not make UnumProvident the claims administrator" because the letters were signed by employees of "Unum, not UnumProvident." *Id.* Here, the letter at issue both comes on New York Life letterhead *and* represents that Chevalier's appeal "is being managed by" a New York Life employee. Opp'n at 5. As a result, the court's analysis supports, rather than undermines, the inference that New York Life administered Chevalier's claim.

\*    \*    \*

In sum, even venturing beyond the four corners of Chevalier's Complaint, the Court concludes that the facts alleged support an inference that New York Life exercised actual control over the BAE plan. For that reason, the Court concludes at this stage that New York Life is a proper defendant to a claim under Section 1132(a)(1)(B). And because New York Life offers no other reason to dismiss the Complaint, the Court will deny its Motion.


## IV. CONCLUSION

The Court concludes with an observation and word of warning. The facts alleged in Chevalier's Complaint suffice to state a claim against New York Life under the highly deferential Rule 12(b)(6) standard. That standard will not apply on a motion for summary judgment. But Chevalier will remain confined to the claims alleged in her Complaint. As explained, that Complaint is replete with allegations that New York Life took adverse actions against her. The Complaint alleges very little about actions taken by LINA—the claims administrator listed in both the STD and LTD policies. *See, e.g.*, Compl. ¶¶ 31 ("NYL denied Chevalier's claim . . . ."), 75 ("NYL has refused to pay the benefits sought . . . .").[4] If discovery reveals, as New York Life now contends, that New York Life played no significant role in administering the STD and LTD policies, Chevalier's path to relief may be quite narrow.

But for now, and for the reasons stated, the Court shall **DENY** New York Life's [9] Motion to Dismiss. An appropriate order accompanies this Memorandum Opinion.

**Dated:** March 20, 2025.



COLLEEN KOLLAR-KOTELLY
United States District Judge

---

[4] The Court also observes that, curiously, the Complaint's prayer for relief requests only that that the Court "enter judgment against the Defendant, New York Life." Compl. at 18. The Complaint, on its face, requests no relief at all against either BAE or LINA, who have both answered the Complaint without addressing the issue.